J-S01038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | |
| v. | : | |
| | : | |
| MOHAMMAD SOHAIL SALEEM, | : | |
| | : | |
| Appellant | : | No. 645 MDA 2016 |

Appeal from the PCRA Order March 24, 2016
in the Court of Common Pleas of Lebanon County,
Criminal Division, No(s): CP-38-CR-0000565-2014;
CP-38-CR-0001112-2014

BEFORE: GANTMAN, P.J., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED MARCH 28, 2017**

Mohammad Sohail Saleem ("Saleem"), *pro se*, appeals from the Order denying his first Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

In its Opinion filed on July 22, 2016, the PCRA court set forth the relevant history underlying the instant appeal. **See** PCRA Court Opinion, 7/22/16, at 1-12. We adopt the PCRA court's recitation for the purpose of this appeal. **See id.**

Briefly, Saleem pled guilty to indecent assault and the summary offense of harassment involving two victims.[2] The victims were employees of a small business owned by Saleem. Upon his guilty plea, the trial court ordered an assessment to determine whether Saleem is a sexually violent

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] **See** 18 Pa.C.S.A. §§ 3126, 2709.

predator pursuant to 42 Pa.C.S.A. § 9792. Saleem was thereafter found to be a sexually violent predator. At sentencing, following a discussion regarding possible deportation proceedings, the trial court sentenced Saleem to an aggregate prison term of 21 months to 10 years. Saleem subsequently filed two post-sentence Motions claiming ineffective assistance of counsel, which the trial court denied without prejudice to Saleem for seeking relief under the PCRA.

Saleem timely filed the instant *pro se* PCRA Petition, claiming that his plea was unknowing and involuntary. In his Petition, Saleem asserted that he had been promised that he would be deported if he entered a guilty plea. The PCRA court appointed counsel to represent Saleem. At the evidentiary hearing, Saleem's PCRA counsel argued that the plea agreement required the immediate deportation of Saleem, and that the Commonwealth violated this agreement. The PCRA court denied Saleem's Petition. Although Saleem was represented by counsel, Saleem subsequently filed numerous *pro se* documents, including a *pro se* Notice of Appeal, followed by a *pro se* court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal. After a **Grazier**[3] hearing, the trial court permitted Saleem to proceed *pro se*, but with appointed stand-by counsel. Saleem subsequently filed a revised Rule 1925(b) Concise Statement, which raised additional claims.

---

[3] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

Saleem now presents the following claims for our review:

1.   Whether the evidence presented in the PCRA [c]ourt was sufficient to establish that trial counsel was ineffective by coercing or misleading [Saleem] to enter a guilty plea [that] was not knowingly, voluntarily and intelligently entered?

2.   Whether the PCRA [c]ourt erred in denying [Saleem's] PCRA Petition where a plea of guilty was induced[,] and [Saleem] is innocent?

3.   Whether the sentencing and PCRA [j]udge, Bradford H. Charles [("Judge Charles"),] demonstrated bias by statements [he] made during the proceedings?

4.   Whether PCRA [c]ounsel was ineffective in failing to investigate and raise claims of arguable merit?

Brief for Appellant at 7.

Because they are related, we will address Saleem's first two claims together. Saleem first claims that the PCRA court improperly determined his plea was not unknowing, involuntary and misleading. *Id.* at 16. Saleem contends that his plea counsel coerced and misled him into pleading guilty, based upon a representation that Saleem would be immediately deported to Pakistan. *Id.* Saleem quotes a letter from his plea counsel, which stated the following: "The District Attorney's Office would also agree to include a provision in the sentencing order that they have no objection to your immediate deportation." *Id.* Saleem contends that his counsel left him with the impression that he would be deported immediately. *Id.* at 17. Saleem further argues that his counsel rendered ineffective assistance by not objecting or informing Saleem that he could withdraw his plea. *Id.* at 18.

- 3 -

According to Saleem, the sentencing judge appeared to be unaware that another judge had accepted Saleem's plea, which was conditioned upon Saleem's immediate deportation. *Id.* at 20.

In his second claim of error, Saleem argues that the PCRA court improperly denied him relief, where his guilty plea was "unlawfully induced where the circumstances make it likely that the inducement caused him to plead guilty and he is innocent." *Id.* at 23. Saleem again asserts that he was unlawfully induced to plead guilty with a promise of immediate deportation. *Id.* Saleem argues that the sentencing judge disagreed with the judge who accepted his plea. *Id.* at 24. According to Saleem, he is innocent, and a surveillance video would prove his innocence. *Id.*

"In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Montalvo*, 114 A.3d 401, 409 (Pa. 2015) (citation and internal quotation marks omitted).

> Where a PCRA court fails to support its holding with sufficient explanations of the facts and law, or fails to provide an adequate opinion addressing all of the claims raised in a PCRA petition, including factual and credibility disputes, a remand is appropriate.

*Id.* at 410.

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." *Commonwealth v.*

***Mitchell***, 105 A.3d 1257, 1272 (Pa. 2014) (citations omitted).  To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."  42 Pa.C.S.A. § 9543(a)(2)(ii).  Specifically, a petitioner must establish that "the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that [a]ppellant was prejudiced." ***Commonwealth v. Charleston***, 94 A.3d 1012, 1020 (Pa. Super. 2014), "Where it is clear that a petitioner has failed to meet any of the three, distinct prongs of the … test, the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met." ***Commonwealth v. Steele***, 961 A.2d 786, 797 (Pa. 2008).

"Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." ***Commonwealth v. Hickman***, 799 A.2d 136, 141 (Pa. Super. 2002) (citations and internal quotation marks omitted).  "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on [a]ppellant." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa. Super. 2011).  Additionally, "counsel cannot be held ineffective for failing to pursue

a meritless claim[.]" ***Commonwealth v. Hall***, 867 A.2d 619, 632 (Pa. Super. 2005).

Upon our review of the parties' briefs and the certified record, we agree with the sound analysis of the PCRA court, as set forth in its Opinion, and its conclusion that Saleem's claims lack arguable merit. ***See*** PCRA Court Opinion, 7/22/16, at 15-21. Specifically, the PCRA court found that there was no promise of immediate deportation in exchange for Saleem's plea, and counsel did not render ineffective assistance in this regard. ***See id.*** We therefore affirm on the basis of the PCRA court's Opinion with regard to this claim.[4] ***See id.***

In his third claim, Saleem argues that the sentencing judge was biased against him. Brief for Appellant at 26. Saleem directs our attention to the following hypothetical, stated by the sentencing judge, as an example of how Saleem could be permitted back into the United States, even after deportation:

> Let me give a hypothetical. Let's say that [Saleem's] ever in Pakistan. He comes into knowledge about a terrorist. He goes to the United States Consulate and says, I'll give up this terrorist. I'll let you know where he is, I'll let you know where he's staying, but you are going to have to let me come back and live with my family in America. Now, when that happens—if that happens—the federal government is going to say, hum, we can take out a terrorist who's dangerous to thousands of people and may commit horrific acts and all we have to do is let this guy

---

[4] We additionally note that, at the sentencing hearing, the Commonwealth informed the trial court that deportation proceedings had been instituted based upon two prior convictions for sexual assault, relating to different victims, which took place in 2009. N.T., 6/3/15, at 5-6.

come back and live in America with his wife and children. That's going to be awful tempting.

Brief for Appellant at 26 (quoting N.T., 6/3/15, at 11-12). Saleem argues that the judge's comments demonstrate the judge's prejudice against him. *Id.* Saleem also directs our attention to the sentencing judge's explanation regarding the court's concern that Saleem would not be incarcerated in Pakistan:

> [Saleem's] not going to be put in jail in Pakistan. I can't—I'm speculating when I say that he might be viewed as a hero there, but—and that is speculation. But I know that he gets off that plane in Islamabad, the American officials are going to send him out of a gate, take his handcuffs off, and say, bye, bye. And he's free as a bird. In fact, that I know and that's not something I'm comfortable with.

Brief for Appellant at 27 (quoting N.T., 6/3/16, at 16).

Our review of the record discloses that Saleem did not raise this claim in his PCRA Petition or before the PCRA court. Accordingly, it is not preserved for appellate review. **See** Pa.R.A.P. 302(a) (stating that a claim cannot be raised for the first time on appeal).

In his final claim, Saleem argues that his PCRA counsel rendered ineffective assistance for failing to investigate and raise claims of arguable merit. Brief for Appellant at 29. Specifically, Saleem argues that his PCRA counsel failed to raise the second and third claims Saleem now raises in this appeal. *Id.* In support, Saleem baldly assets that his claims have arguable merit; counsel had no basis for not presenting the claims; and the claims,

and their cumulative effect, had an adverse effect on the outcome of the proceedings. *Id.* at 30.

Regarding Saleem's claim of ineffective assistance of PCRA counsel, based upon an alleged promise of immediate deportation, we note that Saleem challenged his plea agreement before the PCRA court. During the PCRA proceedings, the PCRA court asked counsel, in Saleem's presence, as to the issues that Saleem sought to raise in the PCRA proceedings. N.T., 3/24/16, at 3. Counsel indicated that Saleem sought to challenge only his guilty plea as unknowing and involuntary, based upon Saleem's belief that the agreement provided for immediate deportation. *Id.* Thus, Saleem's challenge to PCRA counsel's actions lacks arguable merit, as counsel, in fact, challenged the plea agreement.[5]

Under these circumstances, we conclude that Saleem's claim of PCRA counsel's ineffectiveness, based upon an alleged promise of immediate deportation, lacks arguable merit. At the PCRA hearing, Saleem acknowledged the Commonwealth's agreement that it would not object to deportation. N.T., 3/24/16, at 11. The Commonwealth complied with the plea agreement. The Commonwealth, in compliance with the agreement, lodged no objection to the immediate deportation of Saleem. *Id.* at 11. Consequently, there is no arguable merit to Saleem's underlying claim. *See*

---

[5] Our review of the notes of testimony from the sentencing hearing further discloses that the trial court correctly informed Saleem that it had no involvement with federal deportation proceedings. N.T., 6/3/15, at 19, 21-22; *see also* PCRA Court Opinion, 7/22/16, at 15-20.

***Steele***, 961 A.2d at 797 (stating that where a petitioner fails to meet any of the three prongs of the ineffectiveness test, the claim may be disposed of on that basis alone).

We further conclude that Saleem's claim of ineffective assistance, based upon PCRA counsel's failure to allege bias by the sentencing judge, is waived, based upon Saleem's failure to raise the issue before the PCRA court. ***See*** Pa.R.A.P. 302(a) (stating that a claim cannot be raised for the first time on appeal); ***see also Commonwealth v. Henkel***, 90 A.3d 16, 29-30 (Pa. Super. 2014) (*en banc*) (finding ineffective assistance of PCRA counsel claims cannot be raised for the first time on appeal).  We therefore affirm the Order of the PCRA court.

Motion to Expedite denied.  Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2017

ENTERED & FILED
CLERK OF COURTS

**IN THE COURT OF COMMON PLEAS LEBANON COUNTY
PENNSYLVANIA**

2016 JUL 22 PM 3 24

**CRIMINAL DIVISION**

COMMONWEALTH OF                  :        NO. CP-38-CR-565-2014
PENNSYLVANIA                     :              CP-38-CR-1112-2014
                                 :
        v.                       :
                                 :
MOHAMMAD SOHAIL SALEEM           :


**APPEARANCES**

Jared Hinsey, Esquire          **For Commonwealth of Pennsylvania**
**DISTRICT ATTORNEY'S OFFICE**

**Mohammed Sohail Saleem**          *Pro Se*


**OPINION BY CHARLES, J., July 22, 2016**

On March 24, 2016, we presided over a Post-Conviction Relief Act

(PCRA) Hearing in the above-referenced case.   Prior to the hearing,

Mohammad Sohail Saleem (hereafter "DEFENDANT"), through his counsel,

identified only one issue that he intended to pursue via his PCRA Petition:

Whether DEFENDANT's guilty plea counsel was ineffective for telling

DEFENDANT he would be immediately deported to Pakistan?   After

conducting a hearing, we rejected DEFENDANT's claims.   Thereafter, he

filed an Appeal.   After discharging his counsel and choosing to represent

himself, DEFENDANT filed a *pro se* Statement of Errors Complained of on

Appeal that attempted to raise new issues.   We issue this Opinion under

Pa.R.A.P. 1925 in order to address the issue that DEFENDANT did properly

1

raise at the time of his PCRA hearing and to explain why we will not address those issues DEFENDANT now wishes to add.

## I.    PROCEDURAL BACKGROUND

DEFENDANT was charged in two 2014 dockets with various sexually-related offenses. All of the offenses involved sexual assaults committed by DEFENDANT upon women who were employed by a small business owned by him. With respect to Docket CR-565-2014, the Commonwealth charged DEFENDANT with sexually assaulting a woman who we will call J.J. by kissing her, grabbing her, fondling her and eventually ejaculating on her. On Docket CR-1112-2014, the Commonwealth charged DEFENDANT with groping the breasts of another employee who we will call C.M.

Following the filing of the 2014 charges, the Commonwealth filed a Notice under Pa.R.Ev. 404(b). In its Notice, the Commonwealth referenced two prior incidents of sexual abuse committed by DEFENDANT upon other employees and asked that they be admitted to establish motive, intent and common scheme. In its Notice, the Commonwealth indicated that DEFENDANT was convicted of the prior sexual assaults in 2009.[1] A hearing was conducted on October 29, 2014 regarding the Commonwealth's Rule 404(b) motion. As a result of that hearing, we determined the following commonalities with respect to DEFENDANT's two prior victims and the victims of the above-referenced charges:

---

[1] See Docket CP-38-CR-386-2009.

(1)    All of the women were Caucasian;

(2)    All of the women were relatively young;

(3)    All of the women were employed by DEFENDANT at his business;

(4)    All of the women were financially dependent upon DEFENDANT;

(5)    With respect to each victim, DEFENDANT groped, grabbed and/or fondled her breasts;

(6)    Each woman testified that DEFENDANT made a habit of hugging her in a "bear hug" that made her uncomfortable;

(7)    Each of the women described that incidents of sexual misconduct occurred in a room known as the "back room" of the Quick Cell facility.

Based upon all of the information presented, we determined that the incidents relative to all four victims were sufficiently similar so as to be "probative of DEFENDANT's motive, opportunity, intent, preparation, plan and knowledge." We consolidated Dockets 565-2014 and 1112-2014 for the purpose of trial. However, we could not decide based on the record before us whether the relevance of the prior victims' testimony would outweigh the prejudice that would be caused by such testimony. We therefore deferred a final decision regarding admissibility of the prior victims' testimony until after the testimony of J.J. and B.B. could be presented at trial. (See Court Order dated 10/29/2014).

After numerous continuances, the above-referenced dockets were eventually listed for trial during the April 2015 term of court. On April 21, 2015, DEFENDANT entered a plea of guilty. Because DEFENDANT's

3

offenses were within the ambit of Pennsylvania's Megan's Law, he was ordered to undergo an evaluation by the Sexual Offenders Assessment Board.

On June 3, 2015, we conducted a sentencing hearing at which we also addressed DEFENDANT's status under Megan's Law. Relying upon the report of Dr. Robert Stein, we declared DEFENDANT to be a sexually violent predator and we directed him to comply with the registration and reporting requirements applicable to sexually violent predators by Pennsylvania's Megan's Law.

With respect to sentencing, the Commonwealth communicated that it had nol prossed Counts 1, 2, 5 and 6 on Docket 565-2014. Effectively, we were asked to sentence DEFENDANT on two counts of Indecent Assault relating to J.J. and an additional count of Indecent Assault relating to B.B. We were told that the sentencing ranges applicable to the two Indecent Assault charges on Docket 565-2014 were: RS-9 and the sentencing range applicable to Docket No. 1112-2014 was: RS-3.

At sentencing, we were told that deportation proceedings had been commenced against DEFENDANT. (Sentencing N.T. 4). We were told by the prosecutor: "I don't think that there's anything that you can do that will keep him here in this country at this point." (Sentencing N.T. 7). We were also told by victim B.B. that she vehemently opposed a resolution that would permit DEFENDANT to return to Pakistan without serving significant incarceration. (Sentencing N.T. 13-14).

This Court entered into an exchange with counsel regarding deportation. We expressed our sympathy with the position articulated by the victim. We stated:

The Court: ...He gets deported next week, he will have done three plus months in prison. And he's going to get off the plane in Islamabad and the American officials are going to say, bye-bye.

Mr. Grenoble: I don't know that to be fact, your Honor. I don't know what the consequences will be.

The Court: He's not going to be put in jail in Pakistan. I can't – I'm speculating when I say that he might be viewed as a hero there, but – and that is speculation. But I know that when he gets off that plane in Islamabad, the American officials are going to send him out the gate, take his handcuffs off, and say, bye-bye. And he's free as a bird. In fact, that I know and that's not something I am comfortable with.

(Sentencing N.T. 16).

During the sentencing proceeding, another exchange occurred that DEFENDANT now cites as "proof" that this Jurist was prejudiced against him. That exchange involved the possibility of DEFENDANT's return to America after following deportation. The prosecutor posited that it might be in the best interest of Pennsylvania for DEFENDANT to be deported rather than have the taxpayers pay for his incarceration in a state correctional facility for up to 25 years. She stated: "But I also feel like we are doing a service by being able to get him out of here and never letting him come back....There's no reason why he will ever be able to come back to this country again regardless of the fact that his wife and children still

5

reside here." (Sentencing N.T. 11). We responded to the prosecutor's statement that "no reason" would ever exist that would allow DEFENDANT to return to the country by stating:

> Let me give you a hypothetical. Let's say that he's over in Pakistan. He comes into knowledge about a terrorist. He goes to the United States Consulate and he says, I'll give up this terrorist, I'll let you know where he is, I'll let you know where he's staying, but you're going to have to let me come back and live with my family in America. Now, when that happens – if that happens – the federal government is going to say, hum, we can take out a terrorist who's dangerous to thousands of people and may commit horrific acts and all we have to do is let this guy come back and live in America with his wife and children. That's going to be awful tempting. That's going to be awful tempting.

(Sentencing N.T. 11-12). Before ending the discussion, we again emphasized that our example was merely hypothetical. (Sentencing N.T. 12-13). Nevertheless DEFENDANT now claims that we classified him as a terrorist.

Ultimately, we made the decision to sentence DEFENDANT without regard to possible deportation consequences. Before imposing sentence, this Court stated:

> If I am looking at this as I would any other case and I have a gentleman who has two prior convictions for the same thing, is before me for two sexual assaults, and I have a victim here saying, lock him up and throw away the key, do you think I am going to give bottom of the standard range under those circumstances? If you do, you don't know me well enough. So forget about Pakistan. If I am looking at this as I would any other case, he's not looking at the bottom of the standard range. He's looking at the top of the standard range.

We concluded by stating:

> And I think in this case I have to be wise enough to know that there are just certain things I cannot control. And first and

6

foremost, among those is what the federal government decides to do with its immigration policies. They don't give a rip what I say and they're going to do what they're going to do regardless of what I do.

So I am going to analyze this case just as though Mr. Saleem were an American citizen and just as though Pakistan and ICE had nothing to do with this situation. And when I analyze this case in that way, I have to consider that Mr. Saleem is a serial sex offender, that he did this before in 2009, that he had rehabilitative opportunities to see the error of his ways and modify his behavior and instead of doing that, he choose to victimize additional ladies. I have to look at the fact that he was the owner of a business and these ladies worked for him. They were under his supervision. He had a degree of control over them, economically, if no other way. I have to look at the nature of the indecent assault. There are indecent assaults and there are indecent assaults. The conduct is rather broad. And this is on the worst side of the continuum and not the better side of the continuum if there is such a thing. And I have to look at the fact that there are two separate victims of Mr. Saleem's conduct. And I am going to fashion a sentence based on what is now before me just as I would any other person under similar circumstances without regard to the immigration implications of what's going to happen thereafter. At that point, ICE will do what ICE will do and I have to recognize that there's nothing I can do about their decision making process.

(Sentencing N.T. 19-20).

Ultimately, we sentenced DEFENDANT on Docket 565-2014 to serve an aggregate sentence of 18 months to 8 years. On Docket 1112-2014, we sentenced DEFENDANT to serve a consecutive sentence of 3 months to 2 years. DEFENDANT's total sentence was therefore 21 months to 10 years. All of DEFENDANT's individual sentences were within the standard range governing his charges.

On July 3, 2015, DEFENDANT filed a *pro se* Post-Sentence Motion in which he challenged the effectiveness of his counsel. We denied that motion and articulated that his claims would better be addressed under a

7

PCRA Petition. On July 31, 2015, DEFENDANT again filed a *pro se* Post-Sentence Motion. Because his second motion also challenged the effectiveness of counsel, we again declared that DEFENDANT should present his claims via a PCRA Petition.

Following our denial of DEFENDANT's untimely Post-Sentence Motion, DEFENDANT hired Attorney Kristen Weisenberger. On September 1, 2015, DEFENDANT filed a counseled PCRA Petition. The sole issue raised in the PCRA involved the voluntariness of DEFENDANT's plea. DEFENDANT argued that his plea was predicated upon a promise that he would be deported to Pakistan. When deportation did not occur, DEFENDANT argued that he was deprived of the benefit of his bargain. He also argued that his guilty plea counsel was ineffective for leading him to believe that deportation would occur. This Court determined that the issues raised by DEFENDANT triggered the need for a hearing. Eventually, a hearing was conducted on March 24, 2016 regarding DEFENDANT's PCRA claims.

As is the custom of this Court, we asked DEFENDANT's counsel to articulate in her client's presence all grounds that were being pursued in the PCRA Petition. Attorney Weisenberger focused upon the argument that DEFENDANT's plea agreement called for immediate deportation and the Court's sentence violated that plea agreement. She stated:

> We believe Mr. Saleem's guilty plea had not been entered knowingly and voluntarily and intelligently based upon the ineffective assistance of counsel under the believe that he had a plea agreement to be immediately deported to Pakistan.

o

(PCRA N.T. 3). After hearing testimony on this issue from DEFENDANT, Attorney Megan-Ryland Tanner and Attorney David Warner, we issued a Court Order to deny DEFENDANT's PCRA relief. In that Court Order, we stated:

AND NOW, to wit, this 24th day of March, 2016, after hearing, the Court reaches the following findings of fact:

A. The Defendant entered a plea of guilty before this Court on April 21, 2015. The plea was entered pursuant to a plea agreement whereby the Commonwealth agreed to waive applicable mandatory sentences. In return the Defendant agreed to enter a plea of guilty to two misdemeanor counts of simple assault and the Defendant agreed that the sentence on those counts would be totally in the discretion of the Judge.

B. As part of the plea agreement the District Attorney's office agreed that it would have no objection to deportation and it further agreed that it would not take any action to prevent deportation. However, immediate deportation was **NOT** a part of the parties' plea agreement. In fact, the District Attorney's office took the position that it could not control deportation and that deportation was a collateral consequence totally within the purview of the federal government. Moreover, the Defendant's attorney also stated that he told his client that deportation was not a part of the plea agreement and that the District Attorney's office made no promises regarding deportation.

C. To his credit, the Defendant's attorney wrote a comprehensive letter to the Defendant dated April 13, 2015. This letter set forth in concise and understandable language exactly where the Defendant stood with respect to the charges he was facing. The letter sent by the Defendant' counsel communicated that there was no guarantee that the Defendant would be deported. Specifically, the letter stated: "There is no way to determine how much of your sentence you will have to serve before you are deported. It is possible that you would have to serve your entire sentence, possibly 50 years or more, before, you are deported."

D. In addition to the above, the Defendant hired his own immigration counsel and met with that immigration counsel on numerous occasions. The Defendant's guilty plea counsel

9

was not an immigration expert and advised the Defendant of this fact.

E. We find the Defendant's counsel's version of discussions with his client to be credible. We also find the defense counsel's testimony was corroborated by the written letter he provided to the Defendant dated April 13, 2015. Based in no small part on the defense counsel's credible testimony and the testimony of the prosecutor, we determine as a fact that immediate deportation was not a part of the parties' bargain for exchange during the plea bargain process.

F. The issue of deportation arose at the time of sentencing. After a lengthy discussion the Court ultimately decided to sentence the Defendant without regard to any possible deportation consequences. Essentially we treated the Defendant exactly as we would have treated an American citizen if that citizen were before this Court under identical circumstances.

G. In reviewing the totality of information presented at today's hearing, we conclude unequivocally and without hesitation that Attorney David Warner was not ineffective in his representation of the Defendant. In fact, we perceive of very little else that Attorney Warner could possibly have done to outline options for the Defendant and the risks of pursuing each option.

H. We find the Defendant's guilty plea was knowingly, voluntarily and intelligently entered and his effort today to disavow the voluntariness of that plea is rejected.

Accordingly, the Defendant's Motion for Relief under the Pennsylvania Post Conviction Relief Act is denied. The Defendant is advised that he has thirty (30) days from today's date in which to appeal the decision we have rendered today.

A copy of this Order is to be provided to the District Attorney of Lebanon County, to the Defendant's PCRA counsel, and to the Defendant by certified mail, return receipt requested.

BY THE COURT:

/s/ Bradford H. Charles

_____
BRADFORD H. CHARLES

Following our March 24, 2016 Court Order, DEFENDANT filed a flurry of *pro se* documents. Among those documents was a Notice of Appeal. On April 18, 2016, we issued a Court Order noting that DEFENDANT was represented by privately-paid counsel. As a result, we declined to entertain any of DEFENDANT's *pro se* motions other than his Notice of Appeal. We also issued an Order under Pa.R.A.P. 1925 directing DEFENDANT to identify the issues he intended to raise on appeal.

On May 4, 2016, Attorney Weisenberger filed a Motion to Withdraw as Counsel. On May 9, 2016, DEFENDANT filed his initial Statement of Errors Complained of on Appeal. In that Statement, he raised numerous additional issues that had not been raised at the time of the PCRA Hearing, including the following:

- That his PCRA counsel was ineffective;
- That video evidence existed that would prove his innocence;
- That his prior counsel was ineffective for failing to rebut the Commonwealth's Megan's Law assessment;
- That the Judge should have disqualified himself.

None of the issues contained in DEFENDANT's first Statement of Errors included the issues that had been litigated in the PCRA hearing.

On June 14, 2016, we conducted a *Grazier* hearing to determine whether DEFENDANT wished to represent himself. After conducting a colloquy with DEFENDANT, we learned that he did in fact wish to represent himself. However, he also asked that standby counsel be appointed. We

11

therefore appointed the Lebanon County Public Defender's Office to serve as standby counsel. At the request of the Public Defender, we afforded DEFENDANT with additional time to file an Amended Statement of Errors Complained of on Appeal.

On July 10, 2016, DEFENDANT filed a second Statement of Errors Complained of on Appeal. In his second Statement of Errors, DEFENDANT stated that the Court's decision to deny his PCRA relief was "arbitrary and capricious." He also complained about the Court's "interpretation" of a letter introduced at the PCRA hearing through his prior counsel. Because these issues arguably implicate the decisions we rendered following the PCRA hearing, we will address via this Opinion our reasoning with respect to DEFENDANT's PCRA. However, DEFENDANT's revised Statement of Errors also included numerous other issues that were not raised or litigated at the time of the PCRA hearing. Once again, DEFENDANT argued that his PCRA counsel was ineffective, that his guilty plea counsel should have challenged the Megan's Law assessment, that the Judge should have disqualified himself, that a video hard drive would have proven his innocence, and that some sort of civil proceeding is pending. For reasons we will articulate below, we will not address the issues that DEFENDANT declined to raise at the time of his PCRA hearing.

## II.   ISSUES THAT WERE WAIVED

Prior to the commencement of any PCRA hearing, we routinely ask counsel to identify in the presence of the client what issues are going to be litigated during the PCRA hearing. We undertake this action for three reasons:

(1)   To focus the testimony and evidence on the issues actually in dispute; and

(2)   To afford DEFENDANT with the opportunity to correct and/or clarify what counsel indicates if additional unarticulated issues are sought to be raised; and

(3)   To prevent incessant litigation by defendants who desire to serially raise additional PCRA issues as time marches on.

In this case, DEFENDANT's counsel was asked to articulate all issues sought to be addressed via the PCRA hearing. Counsel noted only one – that DEFENDANT's guilty plea was not voluntary due to ineffective assistance of counsel in leading DEFENDANT to believe that he would be immediately deported to Pakistan. It is this issue that we addressed during the March 24, 2016 hearing.

After we denied DEFENDANT's PCRA claim, he subsequently attempted to raise numerous other issues. By failing to raise and pursue these issues at the time of the March 24, 2016 PCRA hearing, DEFENDANT has waived his right to pursue those issues via appeal.

13

It is axiomatic that PCRA claims must be asserted with specificity. See *Commonwealth v. Reyes*, 870 A.2d 888 (Pa. 2005). Vague or conclusory allegations are not preserved for appellate review. *Commonwealth v. Lambert*, 765 A.2d 306 (Pa.Super. 2000). In fact, our Commonwealth's highest court has declared "it is well-settled that claims raised outside of a court-authorized PCRA Petition are subject to waiver regardless of whether the Commonwealth raises a timely and specific objection to them at the time they are raised." *Commonwealth v. Mason*, 130 A.2d 601, 627 (Pa. 2015). In *Mason*, the Supreme Court of Pennsylvania stated: "The Petitioner bears the onus of informing the PCRA Court that he or she seeks to add claims through an amended petition, and, in response, the court shall freely grant leave to amend where doing so achieves substantial justice...." *Id.* at 627. Where no such amendment of the PCRA Petition is sought, the Defendant must be deemed to have waived any issues not presented to the lower court. See *Commonwealth v. Mason*, supra.

The Pennsylvania Superior Court has followed the lead of the Supreme Court. In *Commonwealth v. Rykard*, 55 A.3d 1177 (Pa.Super. 2012), a defendant sought to add two new assertions of trial ineffectiveness during the course of his appeal. Because neither issue was raised in an Amended PCRA Petition, the Superior Court stated: "Having not sought permission to amend his petition to raise these new claims, the PCRA court was not required to address the issues and it did not." *Id.* at 1192.

14

In this case, DEFENDANT raised one issue in his counseled PCRA Petition. Prior to the hearing that was conducted, the Court invited DEFENDANT to articulate all issues that he intended to pursue. In DEFENDANT's presence, counsel noted only one issue – the one involving DEFENDANT's alleged right to immediate deportation. This is the issue that was addressed at length in the March 24, 2016 hearing, and it is the only issue that we adjudicated following the hearing.

To the extent that DEFENDANT now claims to add additional issues, he should be precluded from doing so by virtue of the doctrine of waiver. By failing to articulate his claims he now wishes to pursue regarding the Judge and the allegedly exculpatory video, DEFENDANT waived those issues. Accordingly, we will not substantively address them.[2]

## III.   ISSUE PERTAINING TO PURPORTED PLEA AGREEMENT

The sole issue that was preserved by DEFENDANT for appellate review was aptly articulated by his attorney prior to the PCRA hearing. Attorney Weisenberger stated in response to an inquiry by the Court:

---

[2] With the above being said, we wish to note that DEFENDANT's arguments regarding disqualification of the Judge are predicated upon hyperbole. For example, DEFENDANT's Rule 1925 Statements indicate that the Judge called him a "terrorist." This is simply not accurate. In response to a statement proffered by the prosecutor, the Judge provided a hypothetical scenario by which DEFENDANT could earn a return to America. The Judge emphasized on numerous occasions that his comments were "hypothetical" and not based upon a belief that DEFENDANT was in fact a terrorist. In addition, DEFENDANT points to a letter from the mother of an aggrieved litigant that was published in a local paper as proof that the Judge had "numerous complaints" proffered against him. Similarly, DEFENDANT has investigated the background of the Judge. Because the Judge's son is a Navy SEAL who works for the Defense Department and because the Judge himself has led church-related mission trips to Ecuador, DEFENDANT hypothesizes that the Judge must be prejudiced against Muslims like himself. Such claims are wildly exaggerated and have no basis in fact.

Your Honor, what we filed is what we're sticking with. We indicated that we believe Mr. Saleem's guilty plea had not been entered knowingly and involuntarily and intelligently based upon the ineffective assistance of counsel under the belief that he had a plea agreement to be immediately deported to Pakistan. That obviously did not occur in that he's still here. And he is contesting that he only entered the plea upon the faulty advice of counsel that he was going to be immediately deported. I think that's the basis of it.

On the issue raised by DEFENDANT, we heard testimony from three witnesses, including DEFENDANT himself. Among the evidence that we heard was the following:

• The written guilty plea colloquy set forth DEFENDANT's plea agreement. That plea agreement was: "Commonwealth to nol pros Counts 1, 2, 5, 6 at sentencing. Defendant to plead open. Commonwealth has no objection to immediate deportation." (Exh. 2 and 3; PCRA N.T. 11).

• During DEFENDANT's guilty plea, he was verbally advised by former President Judge Robert J. Eby that his plea agreement called for him to enter an open plea "so that you can receive any sentence up to the maximum sentence which the law permits." (Plea N.T. 2). Judge Eby also articulated that the Commonwealth would have no objection to immediate deportation. (Plea N.T. 2). However, there was no promise that DEFENDANT would be immediately deported.

• Megan Ryland-Tanner was the prosecutor assigned to DEFENDANT's case. She negotiated the possibility of a plea on

16

behalf of the Commonwealth. (PCRA N.T. 16). Although Ms. Tanner believed that DEFENDANT would be deported shortly after sentencing (PCRA N.T. 18), she was very clear that the plea agreement did not require deportation. (PCRA N.T. 19-20). Attorney Tanner was asked a direct question from the Court:

> The Court: Was immediate deportation a part of the plea agreement that you entered into?
>
> Ms. Tanner: It was not from my perspective because, again, I don't have control over what the feds do. So I wasn't going to be the one to say this can't happen, but at the same time I don't have control over what they choose to do.
>
> ...
>
> The Court: But I guess what I am asking, so I am very clear here, was there ever a plea agreement that you made with Attorney Warner that said, a condition of this plea of guilty is that the Defendant will be deported?
>
> The Witness: No.

(PCRA N.T. 22).

- David Warner, Esquire was DEFENDANT's counsel when he decided to plead guilty. Attorney Warner testified that he requested that Attorney Tanner agree to immediate deportation. However, Attorney Warner emphasized: "And from that first conversation, she [Attorney Tanner] indicated to me, I don't have the ability to control that, I can't really help or obstruct that in any

17

way, that's in control of the federal government. And that was her position throughout." (PCRA N.T. 26).

- Attorney Warner recommended that DEFENDANT hire an immigration attorney at Attorney Warner's request. Before entering a plea of guilty, DEFENDANT met with and received advice from an immigration attorney regarding his immigration issues. (PCRA N.T. 9-10).

- Attorney Warner acknowledged that DEFENDANT's "number one goal" was to be deported. However, Attorney Warner testified

> I continued to assure him throughout the process that I couldn't control that. He asked me numerous times, get me deported, do whatever you can, talk to someone, call someone. And I continued to tell him, I can't do anything, there's nothing I can do to expedite that process to make that happen more quickly. It's completely outside my control.

(PCRA N.T. 28-29).

- Attorney Warner wrote a letter to DEFENDANT that was admitted at the PCRA hearing as Exhibit No. 1. This letter comprehensively outlined all of Mr. Saleem's options for him. Attorney Warner described the sentencing ranges applicable to DEFENDANT's charges and told DEFENDANT: "I cannot tell you what your exact sentence will be, but I would expect there to be some period of incarceration due to your prior record." (Exh. 1; PCRA N.T. 33).

- Attorney Warner never advised DEFENDANT that he would be immediately deported as a result of his guilty plea. (PCRA N.T. 34).

In rendering our decision regarding DEFENDANT's PCRA claim, we placed weight upon the letter written by Attorney Warner that was marked as Exh. 1. Among other things, the comprehensive letter outlined the plea agreement for DEFENDANT. Attorney Warner wrote:

> If you agree to plead guilty, the District Attorney's Office will waive the mandatory minimum and will not seek to enforce it. You would plead open to these three total counts with the Judge to sentence you on those charges. The standard range on the charges would be probation to 9 months in jail and probation to 3 months in jail. The District Attorney's office would also agree to include a provision in the sentencing order that they would have no objection to your immediate deportation. I cannot tell you what your exact sentence would be, but I would expect that there would be some period of incarceration due to your prior record.

(Exh. 1). The letter written by Attorney Warner is completely consistent with his testimony and the testimony of Deputy District Attorney Tanner. Simply stated, the Commonwealth promised not to inject itself into the deportation process, but it never promised that deportation would occur. Attorney Warner truthfully communicated this information to DEFENDANT, and he chose to enter a plea of guilty knowing all of his options.

We have little doubt that DEFENDANT hoped to be deported. We also have little doubt that he was surprised when the victim appeared to complain about the prospect of deportation after only three months of incarceration. He may have even been hoping for a sentence at the bottom of his standard range. Whatever DEFENDANT may have hoped does not change the clear reality of what occurred. DEFENDANT voluntarily entered an open plea of guilty knowing that he could be sentenced to jail <u>and</u>

19

knowing that deportation was not a certainty. The fact that events did not proceed as DEFENDANT had hoped or even anticipated does not change the fact that he knew the implications of what he was facing by pleading guilty and nevertheless chose to do so.

The gravamen of DEFENDANT's PCRA is that his guilty plea counsel was ineffective. As we rhetorically asked during the PCRA, "What did Attorney Warner do wrong?" Attorney Warner truthfully described to DEFENDANT what the plea agreement was. Attorney Warner truthfully told DEFENDANT that the Commonwealth would have no objection to deportation, but he could not promise or guaranty a prompt deportation. Attorney Warner wrote a letter outlining all of DEFENDANT's options. He even advised DEFENDANT that the most likely outcome would be a sentence that called for incarceration. We are hard pressed to discern how Attorney Warner provided ineffective representation. To the contrary, Attorney Warner did everything that could reasonably be expected of counsel representing a defendant in a guilty plea.

## IV. CONCLUSION

DEFENDANT raised one issue via his counseled PCRA Petition. That petition was predicated upon two principal assumptions:

(1) That a plea agreement existed that called for DEFENDANT to receive immediate deportation; and

(2) That his guilty plea counsel was ineffective in providing advice prior to his decision to plead guilty.

Based upon the totality of the evidence presented at the PCRA hearing, we concluded and still conclude that no plea agreement requiring deportation existed and that DEFENDANT's guilty plea counsel provided completely accurate and appropriate advice both verbally and in writing.

Having concluded that the pillars upon which DEFENDANT's argument was constructed are made of clay, his PCRA claim for relief can and must crumble. Accordingly, we conclude that DEFENDANT's PCRA Petition was properly denied and we send this Opinion to the Pennsylvania Superior Court in support of our opinion that DEFENDANT judgment of sentence should be affirmed.